NUDD and another. vs. MONTANYE and another.

BAILEE OR AGENT *cannot deny title of his bailor or principal.*

1. In general, one who has received property as bailee or agent, must restore or account for it to his bailor or principal.
2. Defendants claim to have purchased certain property, here in dispute, from the assignee in bankruptcy of one E., as a part of E.'s estate. Plaintiffs testify that they purchased it of E. before he was adjudged a bankrupt; that some months afterwards they loaned it to defendants, to be used and taken care of, and possession to be restored to plaintiffs when they should request it; and that defendants' alleged purchase was made while they were holding under such bailment. *Held*, that if the facts are so found, defendants cannot claim title under their said purchase, as against the plaintiffs.

APPEAL from the Circuit Court for *Dane* County.

Replevin, for "a pair or set of hay scales, or scales for the weighing of stock, heavy loads," etc., which are further described in the complaint as "formerly owned by one Norton Emmons;" but the ownership and right of possession are alleged to have been in the plaintiffs since January 1, 1872. The answer avers that Norton Emmons was declared a bankrupt, on his petition filed February 18, 1871; that on or about the 7th of January previous, being then insolvent, and acting in contemplation of such insolvency, and with a view to give preference to plaintiffs as his creditors, Emmons assigned a large part of his property, including that here in question, to the plaintiffs, who had reasonable cause to believe that Emmons was insolvent; that such assignment was made in fraud of the provisions of the bankrupt law; that Emmons never delivered possession of the property to plaintiffs; and that one Barrows, his assignee in bankruptcy, took possession of it, with the other effects of Emmons conveyed by the assignment, and, in April, 1872, by leave of the bankrupt court, sold and delivered it to defendants as the property of said bankrupt, and they claim to hold and own it by virtue of such sale.

At the trial, the court refused to give to the jury the instruction recited in the first paragraph of the opinion, *infra*, there being testimony to which the same was pertinent.

The defendants had a verdict and judgment; and the plaintiffs appealed.

*Vilas & Bryant*, for appellants:

It is undisputed that the defendants obtained possession of the scales as bailees of the plaintiff, under an agreement that they were to use and take care of them and return them to the plaintiff, or, what is the same thing, return the key. Having so obtained possession, they cannot, while in possession, set up a title derived from a third party. *Hawes v. Watson*, 2 Barn. & Cress., 540; 9 E. C. L., 170; *Harman v. Anderson*, 2 Campb., 243; *Dixon v. Hammond*, 2 Barn. & Ald., 310; *Gosling v. Bir-*

*nie*, 7 Bing., 339 ; *Holbrook v. Wright*, 24 Wend., 169 ; *Marvin v. Elwood*, 11 Paige, 365 ; *McKay v. Draper*, 27 N. Y., 260 ; *Barnard v. Kobbe*, 3 Daly, 35 ; *Reed v. Reed*, 13 Iowa, 5 ; *Estes v. Boothe*, 20 Ark., 583.

*Lewis & Tenney* and *J. C. McKenney*, for respondents.[*]

COLE, J. In order to dispose of this case it is unnecessary to consider and decide all the questions which were discussed by counsel on the argument, and we shall not attempt to do so. Our attention will be confined to a consideration of the exception taken to the refusal of the circuit court to give the following instruction asked on the part of the plaintiffs, namely : " If the jury find that the defendants obtained possession of the scales from the plaintiffs directly as the agents and tenants of the plaintiffs, and as a loan to the defendants, as the plaintiffs testify, then the defendants are estopped from setting up a title derived from any third party while they were so holding possession, and the plaintiffs should recover."

The instruction was founded upon the testimony of the plaintiffs introduced on the trial, which tended to prove that the scales in controversy were loaned by them to the defendants to be used and taken care of ; and that the possession of the scales, or, what was equivalent to the possession, the keys of the scales, were to be returned to the plaintiffs whenever requested. It appeared from the evidence that the plaintiffs purchased the scales of one Norton Emmons in January, 1871, and that the bailment by them to the defendants was in June or July following. In March, 1871, Emmons was adjudged a bankrupt ; and in February, 1872, the defendants, while holding the scales under the contract of bailment, purchased them of the assignee in bankruptcy as part of the estate of the bankrupt. And the counsel for the plaintiffs insists that the de-

[*] The questions solely discussed in the brief of counsel for the respondents, and largely discussed also in the brief for the appellants, are not passed upon by the court.—REP.

fendants had no right, while in possession of the scales as the agents or bailees of the plaintiffs, to acquire a title from a third party, and set it up to defeat the action. This he claims was an act of bad faith on their part, it being their duty to take care of the scales according to the contract of bailment, and to restore them to the plaintiffs when demanded. It seems to us that this position is sound and in accord with legal principles.

The general rule of law upon this subject, as laid down in the books, is, that one who has received property from another as his bailee or agent, must restore or account for that property to him from whom he has received it. Story on Bailm., §§ 102 and 103; Story on Agency, § 217; *Biddle v. Bond*, 6 Best & Smith, 225; *Nickolson v. Knowles*, 5 Mad., 47; *White v. Bartlett*, 9 Bingham, 378. "Generally speaking," says Mr. Justice Story, "restitution of the property deposited is to be made to the bailor; although there may be special cases in which that would not be required or justified. As, for instance, if the goods have been deposited by a thief who has been convicted, and the owner reclaims them, the latter alone is entitled to receive them." Story on Bailm., *supra*. And the learned author shows that by the older authorities it was held that if the goods of A. were bailed by B. to C., C. must redeliver them to B., and was not allowed to alter that possession which had been committed to him in order to restore it to the right owner. But this rule has been relaxed by some of the modern authorities, as will be seen in *Biddle v. Bond, supra; Gosling v. Birnie*, 7 Bing., 339; *Thorne v. Tilbury*, 3 Hurl. & Nor., 534; *Cheesman v. Exall*, 6 Exch., 341; *Hardman v. Willcock*, note (a) to *White v. Bartlett, supra*. But it is not necessary to dwell upon these cases, as we do not intend to come in conflict with them. Chancellor WALWORTH, in *Marvin v. Ellwood*, 11 Paige, 366–376, lays down the rule applicable to the case before us. He says, "A bailee or agent who has received property as such, is at all times at liberty to show that his bailor or

principal has parted with his interest in the property subse-quent to the bailment, or to the delivery to the agent. But such bailee or agent cannot at law dispute the original title of the person from whom he received the property." In *Chees-man v. Exall*, MARTIN, B., observes: "There are numerous cases in connection with wharfs and docks, in which, if the party intrusted with the possession of property were not es-topped from denying the title of the person from whom he re-ceived it, it would be difficult to transact commercial business." In that case a party had pledged property to which he had no title or right to pledge, and, in an action by the pledgor, the person with whom the property was pledged was allowed to set up the *jus tertii* to defeat a recovery. In *Biddle v. Bond* there is a full examination of the English cases bearing upon the question as to when or under what circumstances an agent or bailee may set up the *jus tertii* in an action by his principal, and when the bailee would be estopped to deny the bailor's title. Says BLACKBURN, J.: "We think that the true ground on which a bailee may set up the *jus tertii* is that indicated in *Shelbury v. Scotsford*, Yelv., 23, viz: that the estoppel ceases when the bailment on which it is founded is determined by what is equivalent to an eviction by title paramount. It is not enough that the bailee has become aware of the title of a third person." In this case, however, the defendants have acquired an adverse title, and seek to set it up to defeat the rights of their principal against their own manifest obligations to him. It is as though a tenant in possession of land should acquire an adverse title and set it up to defeat the title of his landlord. The cases are strictly analogous; and if the law will not allow the tenant to commit such an act of bad faith towards his landlord, it ought not to permit the defendants to avail themselves of an adverse title acquired while holding the prop-erty as agents and bailees of the plaintiffs. The defendants had agreed to make restitution of the property to the plaintiffs. To relieve themselves from that duty, they purchase an adverse

title and seek to hold the property under it. If agents and bailees were permitted thus to deal with property intrusted to their care — were allowed to buy in adverse claims against it, and set them up as against their principals or bailors, — it would, indeed, "be difficult to transact commercial business."

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.